# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
### WESTERN DIVISION

No. 5:19-CT-3102

**FILED**

'APR 1 2 2019

PETER A. MOORE, JR., CLERK
US DISTRICT COURT, EDNC
BY _____ DEP CLK

JESSE T. GRAHAM, #0151891

PLAINTIFF, Pro Se

V.

MELISSA EVANS, OFFICER IN           )
CHARGE FOR DEPARTMENT               )
OF PUBLIC SAFETY; PAZAVAR           )
C. PRIEST, OFFICER OF SECURITY      )
FOR DEPARTMENT OF PUBLIC            )
SAFETY; JENNIFER L. WALSH,          )
ASSISTANT SUPERINTENDENT            )

FOR DEPARTMENT OF PUBLIC            )     **JURY TRIAL DEMANDED**
SAFETY; KIMBERLY GRANDE,            )
EXECUTIVE DIRECTOR FOR INMATE       )
GRIEVANCE RESOLUTION BOARD          )
                                    )
        Defendants                  )
_____)

## COMPLAINT

Plaintiff Jesse T. Graham ("Plaintiff" or "Mr. Graham") brings the following

Complaint against Defendants Captain Melissa Evans, Officer-in-Charge for

Columbus Correctional Institution #4355, Captain Pazavar C. Priest, Officer of

Security at Columbus Correctional Institution #4355, Jennifer L. Walsh, Assistant

Superintendent Columbus Correctional Institution #4355, Kimberly Grande,

Executive Director of Inmate Grievance Resolution Board. Plaintiff's Complaint

asserts claims of violation of his civil and constitutional rights under the First and Fourteenth Amendments to the United States, and for conversion and gross negligence under North Carolina law, also Breaching the February 2010 Settlement Agreement ("Martin" v. "Keller"), el al., 5:09-CT-3021-FL (E.D.N.C) revised Division of Prison Policies and Procedures Manual B.0700 (New section B.0705 - Inmate manuscripts (A) Preparation, (1), (2), (3), and (4) also Confiscation, (1), (2), and (3) under department of Public Safety and Procedures.

## I.     FACTUAL BACKGROUND

*1)*    Plaintiff is currently incarcerated in the custody of the Department of Public Safety Division of Prison. Plaintiff is a respected Graphic Artist in the Publication industry who has been employed by Fortune 500 companies. He is an inventor of green products via recycled paper products to re-invent many toxic plastic products that are presently in the hobbyist market.

*2)*     Hydraulic Engineer (U.S. Marine Core A-6E Aircraft); 66-year old Vietnam Era Veteran; Designer and Creator of the 1981 NFL Cincinnati Bengals iconic helmet (6 Black Tiger Stripes); Inventor of recycled paper green products; created/invented new western art called *Gramigami*; author of '*Do-It-Yourself*

*Gramigami Fantasy Racer* (CR# TXU2-096-349), which is a directional book for

hobbyist of plastic remote control cars. This book gives instructions on how to

build these items using recycled paper instead of Plastic.

3)  <u>Sea Education Society (SES)</u> scientists say these plastics take thousands of

years to decay, thus becoming a devastating element of pollution. As a result,

fish and wildlife are becoming intoxicated. Consequently, the toxins from many

plastics have entered the food chain, threatening 'human health.' The Plaintiff's

desire, via his art and engineering skills, is to reinvent many possible dangerous

toxic plastic products using recycled paper. Plaintiff's epiphany started in the

year 2000 while at Central Prison, Raleigh, North Carolina to this present date.

4)  Many viewers and hobbyist have been astonished by Plaintiff's recycled paper

model car prototypes. For instance, one admirer and hobbyist stated, "I can't

believe its paper!" Hobbyist of all ages desire to learn how to create their own

*Do-it-Yourself* model car built with recycled paper verses a machine

manufactured plastic model car. This also includes the Remote Control (RC) car,

(RC) plane, and the (RC) water operated vehicles for the hobbyist industry. This

lawsuit arises from the defendants' efforts to silence the Plaintiff's *Do It Yourself*

voice via his manuscript to reinvent recycled paper into eco-friendly green

products to aid in lessening the threat to human health, our food chain, and wildlife.

5) Plaintiff brings this lawsuit against officials of North Carolina Department of Public Safety, Division of Prisons, due to their violations of his rights, including his rights under the First Amendment to the United States Constitution. In addition, Defendants confiscated Plaintiff's handwritten, illustrated *Gramigami Do-It-Yourself* <u>Fantasy Racer</u> manuscript, copyrighted registration #TXU2-096-349. Plaintiff had been working on this particular *Do-It-Yourself* manuscript from the year 2012 until the confiscating date of February 3, 2018. Plaintiff spent countless hours developing, illustrating, and inventing special incisions to be made upon the surface of the paper. These 21 invented incisions were all taught in his *D.I.Y.* manuscript which he created and wrote during his housing at Nash Correctional Institution and Columbus Correctional Institution. The defendants confiscated and stored Plaintiff's manuscript without providing plaintiff with a complete grievance process to resolve the plaintiff's grievance (#00074), but mailed Plaintiff's manuscript on March 1, 2018. This is a total of 53 calendar days before Defendant Kimberly Grande (Executive director of Inmate Resolution board) had completed, documented, and mailed her response to the Plaintiff.

## II.    JURISDICTION AND VENUE

6)    The court has jurisdiction over federal claims in this action pursuant to 28

U.S.C. & 1331, in that the claim arises under the Constitution of the United

States; and by 28 U.S.C. & 1343. The matters in controversy arise under the

Civil Rights act 42 U.S.C. & 1983 and 42 U.S.C. & 1981. This court has

supplemental jurisdiction over the state constitutional claims pursuant to 28

U.S.C. & 1367.

7)    Venue is appropriate in this Court pursuant to 28 U.S.C. & 1391 because all

Defendants are located within the Eastern District of North Carolina, and

substantial parts of the events and omissions giving rise to Plaintiff's claim

occurred and continue to occur within the Eastern District of North Carolina.

Also, in past events within the E.D.N.C, claims concerning a violation of the First

Amendment rights were appropriate in this Court – Martin v. Keller, et al., 5:09-

CT-3021-FL (E.D.N.C).

## III.    PARTIES

8)     Plaintiff Jesse T. Graham is an individual citizen of the State of North Carolina. He is currently confined by the Department of Public Safety, Division of Prisons at Columbus Correctional Institution #4355, Brunswick, North Carolina. Plaintiff has previously been an inmate at other Division of Prison facilities including the following: Central Prison, Harnett CI, Avery Mitchell CI, Nash CI.

9)     Defendant Melissa Evans is Captain/Officer-In-Charge (OIC) at Columbus Correctional Institution #4355. She was responsible for the operation and administration of this facility during the date/time of the confiscation – 2/3/2018, including the management of Dept. of Public Safety Prison Policy and Procedures. Defendant confiscated Plaintiff's manuscript (*CR # TXU2-096-349*) and recycled paper model car prototype as Arts and Crafts contraband, stating it as unauthorized unit policy practice. Defendant denied Plaintiff grievance remedy request which was the return of his manuscript. Defendant Captain Evans is sued in her individual and official capacity.

10)     Defendant Pazavar C. Priest is Captain/Officer-In-Charge (OIC) of facility security at Columbus CI. She is responsible for the management of Dept. of Public Safety Prison Policies and Procedures. Defendant Priest investigated Plaintiff's grievance # 00074, (Step 1 unit response) concerning the confiscation of Plaintiff's manuscript and recycled paper model car prototype. Plaintiff's

grievance was received on 2/5/18 - (Screening Process). Grievance was accepted and began its first official review. On 2/8/18 Defendant Priest completed her investigation - Step One Unit Response, 'No Further Action is Needed.' Plaintiff received the Unit Response in 72 hours of filing the grievance (#00074). Defendant Priest failed to remedy the Plaintiff's remedy request which was the return of Plaintiff's manuscript and paper model car. Defendant Priest is sued in her individual and official capacity.

11)    Defendant Jennifer L. Walsh is Assistant Superintendent for Custody and Operations at Columbus CI, including the management of Department of Public Safety Prison Policy and Procedures. Defendant agreed with Captain Evans and Captain Priest (Step two- Area/Complex/Institution Response) denying Plaintiff's remedy request for the return of Plaintiff's personal manuscript and recycled paper model car. Defendant Walsh's response was, 'Your grievance has been properly responded to in the Step One Response (Captain Priest's investigation). 'No further action is recommended' - 2/22/18). Defendant Walsh is sued in her individual and official capacity.

12)    Defendant Kimberly Grande is Executive director of North Carolina Department of Public Safety Division of Prisons Inmate Grievance Resolution Board, including the management of Prison Policy and Procedures. Defendant

Grande denied the Plaintiff's remedy request for the return of Plaintiff's Personal Manuscript and Recycled Paper model car. Defendant Grande is sued in her individual and official capacity.

13) Plaintiff obtained six credible witness affidavits from witnesses that overheard and personally witnessed the 2/13/18 confiscation of Plaintiff's manuscript and recycled paper car by Defendant Captain Melissa Evans. Plaintiff believes and therefore alleges that the actions of Defendant Evans, as set forth herein, constituted the official policy and customs of the Defendants. These actions were part of a pattern of abusive, unreasonable conduct in violation of citizen's right, depriving Plaintiff of his requested grievance remedy – To return Plaintiff's manuscript and paper model car (*Grievance # 00074*).

14) All Defendants (Evans, Priest, Walsh, and Grande) acted knowingly in concert outside the scope of revised Division of Prison Policy and Procedures set within Manual B.0700, New Chapter B., Section .0705, - Inmate Manuscript (a) Preparation, (1)(2)(3)(4) also (d) Confiscation, (1)(2)(3), breaching the Settlement Agreement of February 2010, signed by J. Philip Allen (Assistant Attorney General for N.C. Department of Justice, Attorney for N.C. Department of Correction). Defendants acted without reason and with intentional acts to deprive and silence Plaintiff by denying the return of Plaintiff's manuscript when

it was requested on Plaintiff's grievance as the remedy. Also with malicious intent and corrupt reasoning all defendants conspired in like manner to deny Plaintiff Grievance Remedy Process and therefore all Defendants having personal knowledge of the Settlement Agreement New Policy concerning Inmate Manuscripts (Chapter B., Section .0705). All Defendants are liable for the violation of Plaintiff's rights.

## IV.  FACTUAL ALLEGATION

Plaintiff reinvented recycled paper into quality usable green products at Central Prison, Harnett, Nash, and Columbus Correctional Institutions.

### Central Prison  February 2000 – May 2002

15)  Plaintiff began reinventing recycled paper into quality ecofriendly usable products at Central Prison in or about February 2000. Plaintiff continued to reinvent recycled paper into green products after leaving Central Prison in May 2002.

### Harnett C.I.  May 2002 – April 2005

16)  In 2002, while Plaintiff was confined at Harnett CI, Plaintiff was well regarded by both Department of Public Safety Staff and fellow Inmates as a creator of recycled paper products. He created ecofriendly products such as

paper model cars, flowers, picture frames, desk sets, chests, cigar holders, stand up keep sake cards, etc.

17)    In 2003, pictures of a Black 70' Chevelle SS were viewed by a die cast model car company (1320, Inc.) in the Thomasville-High Point area. The Black Chevelle SS was all recycled paper. The company owner was amazed at the paper model car and sent compliments to Plaintiff praising the quality of his work and 'to continue on with the creation of green products.'

### Nash CI February 2007 – May 2017

18)    Plaintiff transferred to Nash CI in Feb. 2007. He joined Nash Art Club and became an active member, also secretary. Plaintiff won awards and was named honorable mention in an onsite exhibit judged by judges from Nash Technical College. Plaintiff continued to reinvent recycled paper into many green products, along with graphite art and pastel art.

19)    In or about August 2012 Plaintiff designed, engineered, and reinvented recycled 14-point paper boards into a 1968 Yellow Boss 302 Mustang for a friend (Rodney Jernigan), along with a recycled paper gas station display. All items were made of biodegradable recycled paper. These products are all eco-friendly.

20)     September 2012 - October 2012 – Rodney Jernigan's birthday (September

17, 1968) had come and Plaintiff's friend (Rodney Jernigan) came to visit Plaintiff

at Nash Cl. Plaintiff was permitted to give Mr. Jernigan the 68' 302 Boss Mustang

and Gas station as a birthday gift. This is one of many reinvented items created

by the Plaintiff from ecofriendly recycled paper.

21)     After Mr. Jernigan (Plaintiff's friend) received his birthday gift he wrote to

Plaintiff that he had taken it to Richard Petty's Auto Shop in Randleman, NC to

allow some of his friends to see it. Along with Mr. Richard Petty, many of Mr.

Jernigan's friends could not believe the 68' Boss 302 Mustang and gas station

were created from recycled paper.

22)     In 2012, a particular mail correspondence between Plaintiff and Mr.

Jernigan stated Mr. Jernigan would try to obtain a Publisher for Plaintiff's

manuscript if Plaintiff could construct a type of *Do-It-Yourself (D.I.Y.)*, step by

step directional book. It would be directed towards hobbyist, teaching the art

of reinventing recycled paper into quality paper cars.

23)     Also in 2012 Plaintiff had to create a title for his manuscript. Taken from

the traditional Japanese art 'Origami', the art of folding paper to form objects,

Plaintiff implanted his last name in short term, Gram. Then taking 'igami' from

origami, but dropping the 'O R' (oriental), Plaintiff not only created a title but

created a new art term of Western art called 'Gramigami,' thus the title of his manuscript (*CR # TXU2-096-349*).

24) Plaintiff also in 2012 invented, developed, and engineered a unique technique creating water and oil resistant remote control car bodies from recycled paper. Remote Control model cars is a multi-billion-dollar industry. Almost all of its products are made from non-biodegradable toxic plastic. Plaintiff's design (reinvented paper model remote control car bodies) can eliminate a percentage of harmful plastics and toxins from entering our food chain. These toxins threaten human life as well as wildlife.

25) In 2012 Plaintiff commenced to write and illustrate his first manuscript, titled Gramigami, Do-It-Yourself Fantasy Racer. Plaintiff's automobile of choice was a 1968 Z/28 Camaro. The chosen year, 1968, was in honor of beneficiary and friend Mr. Rodney Jernigan, whose birth date year is 1968.

26) While at Nash CI, Plaintiff spent hundreds of hours through trial and error developing precise incisions made upon recycled paper in order to get the paper to conform to extreme bending, curving, and rounding for smooth turns and angles, etc. This made the Plaintiff's paper model bodies extremely aerodynamic and spot on realistic to the viewer or hobby enthusiast. In addition, the teaching to make the special incisions are so simple, but very unique. Its

explained so that a 10-year old could easily make the proper incisions accurately, via the Plaintiff's <u>Gramigami Do-It-Yourself Fantasy Racer manuscript.</u>

27)     During 2013 Plaintiff designed, illustrated, and did precise mechanical drawings by hand, also master templates. Each piece of reinvented paper had its own master template and was logged in the manuscript. This allowed the amateur hobbyist to trace the master templates upon a piece of paper and have a perfect finished model car part, even if the hobbyist could not draw. The master templates did all the hard work for the amateur enthusiast.

28)     In the year 2014 Plaintiff started assembling the front end of the 1968 Z/28 Camaro. The front section (clip) consisted of right/left fenders, a hood, scoop, and a front nose (clip) with grill and hide-away head lights. This was covered with Chevrolet hugger orange and triple black stripes, all reinvented and created with recycled paper.

29)     From 2014 to 2016, Plaintiff illustrated and perfected his manuscript directions, also the 1968 Z/28 Camaro front end. Plaintiff also designed the front cover for his Manuscript book (Copyright # TXU2-096-349).

<u>Columbus CI May 2017 – Present Day</u>

30)     In May 2017, Plaintiff was transferred from Nash CI to Columbus CI. Upon arrival, Plaintiff's personal belongings were searched by certified Division of Prisons Staff. Plaintiff's manuscript and recycled paper model car's front end was also searched, approved, and admitted as Plaintiff's personal belongings into Columbus CI. The Manuscript and recycled paper model car were not classified as Arts and Crafts contraband nor were they confiscated by correctional staff on the date of Plaintiff's arrival to Columbus CI.

31)     From May 2017 to February 2018 (9 months), Plaintiff's locker contained all Plaintiff's personal property including his manuscript and recycled paper model car. Plaintiff's locker was searched at least once a week, four times per month. This is a total of 36 hands-on personal searches of Plaintiff's dormitory locker by D.P.S. officers. At no time was Plaintiff's manuscript or bright hugger orange/black stripes 68' Z/28 Camaro front end confiscated as Arts and Crafts Contraband. Both were handled by and in plain view of search officers.

32)     December 2017 - Plaintiff worked on personal manuscript's illustration, mechanical drawings, master templates, and he also continued to assemble 1968 Z/28 Camaro's RC (Remote Control) body over the weekends of the 23rd, 24th, 30th, and 31st nearing its completion.

33)    During some weekends of December 2017, Defendant Captain Melissa Evans would enter Dayroom D, of Maple Unit, and see the recycled model car and manuscript sitting in plain view. This was while she inspected Dayrooms (A, B, C, D), showers, Restrooms and all inmate sleeping areas. Defendant Evans did not approach Plaintiff or tell Plaintiff that his paper model car and manuscript were Arts and Crafts Contraband. Defendant Evans did not Confiscate Plaintiff's items during these inspections even though Defendant saw both items in plain view while inspecting the Dayroom.

34)    January 2018 – During the weekends of the 6th, 7th, 13th, 14th, 20th, 21st, 27th, and 28th, Plaintiff worked on recycled paper model car and *Fantasy Racer* manuscript. On one occasion, while Plaintiff was sweeping around the area where he had been working on his manuscript and model car, Defendant Evans walked right up and asked the Plaintiff 'Are you the janitor.' Plaintiff, with the broom in his hand, replied he 'was not the dayroom janitor.' On this particular occasion the 14" by 6" Bright Orange 1968 Camaro and Manuscript were sitting on the table in plain view, approximately 5 ft. from Captain Evans. Captain Evans said nothing further to Mr. Graham, nor did she make any comments concerning the paper model car or manuscript as they sat on the table directly in front of

her. She said nothing about them being Arts and Crafts Contraband. She just turned and left Dayroom D.

35) Prison Staff (Officer Nance, Officer Hughes, Officer Walters, Pert Team members, and Sergeants) were aware that Plaintiff was working on *'Do-It-Yourself Gramigami Fantasy Racer'* manuscript and assembling 68' Z/28 Hugger Orange and Black Striped Camaro (14" by 6" wide). None of the above listed prison staff considered Plaintiff's activities to violate any written safety Prison policies, nor did any staff member attempt to confiscate Plaintiff's paper model car or manuscript. The Period being stated is during the months of December 2017 thru January 2018.

36) Also during the months of December and January numerous prison officials would come to Dayroom D, Maple Unit, to see the recycled paper model car on a daily basis and witness its progress. All of these prison officials and employees complimented Plaintiff for this craftsmanship and unique idea of eliminating plastic toxic products via reinventing recycled paper into products of greater value. They not only complemented Mr. Graham on his craftsmanship, but also on the fact that his item was biodegradable and environmentally friendly to human health and wildlife. It was a 'game changer' for the eco system.

37)     On February 3, 2018, between the hours of 7 a.m. and 8 a.m., Officer Baxley came into Dayroom D of Maple Unit where Plaintiff was seated. On the table was a Bright Orange, Black Striped 1968 <u>Fantasy Racer</u> Camaro Paper Prototype model. Alongside the table in a chair was an illustrated (with written directions) *D.I.Y.* manuscript instructing individuals (12 and up) on how to reinvent recycled paper into model cars/remote control car bodies.

38)     Officer Baxley said to Plaintiff in a quiet tone of voice, 'She's coming to get this.' Plaintiff responded, 'She who?' Officer Baxley said, 'Captain Evans.'

39)     Seconds after Officer Baxley informed Plaintiff of Defendant Evans' intentions, in walks Defendant Evans headed directly towards the table where Plaintiff was seated. Officer Baxley also stood next to the table.

40)     Five to six inmates were in Dayroom D during the confiscation of Plaintiff's manuscript and model car. They were sitting in chairs or standing, only about 5 to 10 feet from where Plaintiff, Officer Baxley, and Defendant Evans were situated. Plaintiff obtained affidavits/statements from these inmates.

41)     Defendant Evans said in a very loud distinct audible and demanding tone of voice, 'I need to get this!' Plaintiff replied, 'This what?'. Defendant Evans replied, 'This contraband!'

42) Plaintiff said to Defendant Evans, 'This prototype model is 100% all paper Captain Evans, non-threatening to Unit security.' Captain Evans replied, 'I don't care, Its all contraband!'

43) Plaintiff said, 'Captain Evans, I am teaching people through my *DIY* manuscript how to turn recycled paper into a green product of greater value.' This prototype can be used as a shelf model, a collectable, or an RC body for the hobbyist verses using plastic or diecast metals that can cost more to process, produce, and manufacture. Plus, plastic and/or diecast metals are not easily degradable and not environmentally friendly. 'This paper model is a green product.' Defendant Evans said once again, 'I don't care, It's contraband! 'It's Homemade Arts and Crafts, that's a violation of Unit SOP (Standard Operating Procedures).'

44) Plaintiff said to Defendant Evans, 'It's all recycled paper, just like the homemade cards made by Maple Unit inmates, the paper crafted books (photo albums, magazines, homemade board game pieces that inmates create); also, homemade cardboard shelves in several Maple Unit inmate's lockers are all Arts and Crafts...these items aren't confiscated as arts and crafts contraband.'

45) Captain Evans ordered Officer Baxley to 'get all this contraband and bring it to her office' in the unit operation department.

46)     Mr. Graham requested, 'Can I send this home Captain, I don't want you (Defendant Evans) to destroy my manuscript and model car, my six years of work.' Defendant Evans just nonchalantly preceded to walk out of Dayroom (D) and never answered or acknowledged Plaintiff's request about sending the contraband paper-prototype model car and manuscript home instead of Defendant Evans destroying both items.

47)     Defendant Evans gave Officer Baxley a direct order to 'get all contraband and bring all items to her office' (Columbus Corrections Operations Department).

48)     Officer Baxley and Plaintiff Graham began collecting all the items (paper model 1968 Z/28 model car and manuscript) deemed by Captain Evans as contraband Arts and Crafts, a violation of policy.

49)     Officer Baxley and Plaintiff carried all the designated items of contraband and walked through dormitory (C) toward Maple Unit master control.

50)     Plaintiff observed five Caucasian inmates in Dayroom (C) playing a board game called <u>Pathfinders.</u> On the table was a map, a pair of dice, and figurines of all shapes and colors. All of these items were homemade Arts and Crafts in plain view of Defendant Evans.

51)     Defendant Evans had just inspected Dayroom (C) but did not confiscate the dice, maps, or figurines, all of which were homemade Arts and Crafts. She permitted these five Caucasian inmates to play the board game <u>Pathfinders</u> without confiscating these items as Arts and Crafts contraband, which according to Defendant Evans' words 'is a violation of Unit SOP.' Plaintiff obtained affidavits/statements from Caucasian inmates playing board game <u>Pathfinders.</u>

52)     Officer Baxley and Plaintiff Graham exited Dayroom (C), Maple Unit, and entered Master Control. Officer A. Nance was posted at his duty post behind the desk as Plaintiff and Officer Baxley set all the Arts and Crafts contraband (Manuscript/Paper Model Car) on the desk where Officer Nance was seated.

53)     Officer Nance and Officer Shaw expressed their disappointment and displeasure of Defendant Evans' action to confiscate the paper model car and manuscript.

54)     Officer Nance had observed the assembling of the bright orange, black striped Z/28 from its infancy. Officer A. Nance stated while in the presence of Officer Baxley, Officer Shaw, and Plaintiff that he (Officer Nance) 'would have loved to have seen the model car completed and what (Defendant) Captain Evans did was wrong.'

55) In the Unit Operation department (Defendant Evans' office area), Officer Baxley retrieved a shipping box and brought the box to the holding cell where Plaintiff was confined with his manuscript and paper model car.

56) Plaintiff observed the recycled paper model car and manuscript being placed in the box; newspapers were used as packaging; then Officer Baxley taped the box shut.

57) Defendant Evans came into the holding cell area to insure the packaging was being done properly by Officer Baxley.

58) Plaintiff asked Defendant Evans, 'Can you please give me three weeks or till the end of this month (February) to finish the paper model prototype and Manuscript, then mail it to my son?'

59) Defendant Evans said with a loud voice emphatically, 'No, Its got to go!'

60) Plaintiff said to Defendant Evans, 'I came on this unit (Columbus CI, May 23, 2017) with this manuscript and [recycled paper] model car and was fully searched in Receiving; both items (car and manuscript) were approved as my (Plaintiff's) legal personal property by certified [Department of Public Safety] Prison Officials.'

61)     Defendant Evans said, 'You should not have been allowed to bring the contraband (paper model car and manuscript) on this camp (Columbus CI) nine months ago! It's contraband!'

62)     Officer Baxley obtained Plaintiff's friend's address and filled out a DC-160 form (Inmate Personal Property Inventory) to send the contraband items to the friend's residence.

63)     Officer Baxley filled out the DC-160 Personal Property inventory as:

1 – homemade model car

1 – Book Manuscript

a) Plaintiff has copy of Feb. 3, 2018 DC-160 Personal Property Inventory form

b) Failure to write Title and number of pages, plus signature of Defendant Evans or check confiscation on DC -160 per Policy B.0705, Confiscation, (1)(2)(3).

64)     On February 3, 2018, Plaintiff wrote a grievance (#00074) concerning the wrongful and bias confiscation of his paper model car and manuscript.

65)     Plaintiff's remedy to resolve the grievance was to return Plaintiff's manuscript and paper prototype car.

66)	On Defendant Evans' shift for a total of 30 days the defendant neglected to seize homemade arts and crafts from Caucasian inmates playing the game Pathfinders. These are the following dates:

February 4, 2018

February 17, 2018

February 18, 2018

March 3, 2018

March 4, 2018

These games were played in Dayroom (C), Maple Unit. Plaintiff obtained affidavits/statements.

67)	Plaintiff's manuscript and paper model car were stored for approximately 30 days by Defendant Evans and mailed out by U.S. Postal Service on or about March 1, 2018. This is during Plaintiff's appeal from investigating officers Defendant Priest and Defendant Walsh.

68)	Defendant Priest completed her Step One – Unit Response investigation within 2 to 3 days. Defendant Priest failed to investigate or take statements from inmates in Dayroom (C) (Five Caucasian Inmates) and Dayroom (D) (four to five eye witnesses) of Maple Unit. These individuals witnessed the confiscation of my manuscript and paper model car on February 3, 2018.

69)      Officer Nance and Officer Shaw were both on duty in Maple Unit on February 3, 2018 during the confiscation.

70)      Defendant Evans signed the log book held by Officer Nance and Officer Shaw.

71)      Defendant Priest failed to interview Officer Nance and Officer Shaw.

72)      Defendant Priest agreed with Defendant Evans' confiscation of manuscript and recycled paper model car as contraband property and denied Plaintiff's grievance remedy which was the return of Plaintiff's manuscript and paper model car.

73)      Defendant Priest stated that Plaintiff's grievance needed 'No further action', dated February 8, 2018.

74)      Defendant Walsh (Assistant Superintendent) completed her <u>Step Two-Area/Complex/Institution Response.</u> Plaintiff's grievance had been properly responded to by Defendant Priest. Defendant Walsh stated, 'No further action recommended.' Defendant Walsh was also in agreement with confiscation of manuscript and denied Plaintiff's remedy to return Manuscript.

75)      Defendant Kimberly Grande (Executive Director, Inmate Grievance Resolution Board) agreed with Columbus CI administrators' response. Defendant Grande denied Plaintiff's remedy to return Plaintiffs manuscript.

76) Defendant Grande agreed that Defendant Priest's investigation was properly done and Defendant Evans' confiscation of Plaintiff's manuscript was within the scope the Settlement Agreement (Martin v. Keller, et al., 5:09-CT-3021-FL) (E.D.N.C.).; Policy B. 0705, Inmate Manuscript, Confiscation, (1)(2)(3).

## FIRST CAUSE OF ACTION – ALL DEFENDANTS
## VIOLATION OF PLAINTIFF'S RIGHT TO FREE SPEECH
## UNDER THE FIRST AMENDMENT

77) Plaintiff incorporates by reference paragraphs 8 through 76 in this Complaint as if fully set out herein.

78) Defendants deprivation of Plaintiff's protection under Settlement Agreement Policy B.0705, violated Plaintiff's First Amendment right to free speech. From the moment Plaintiff's manuscript was confiscated and then mailed out the Plaintiff's right to free speech under the First Amendment was violated. According to DOC Policy an inmate can only receive a writing if it comes directly from a Publisher, meaning the Plaintiff's voice through his manuscript had been silenced because he will never be allowed to complete his manuscript. Since the Plaintiff's work had not been published because his work had not been allowed to be completed, his manuscript can never be mailed back into any North Carolina Department of Correction facility, per Policy D.0100 (a) – Inmate

Publication Privileges. Plaintiff's writing was a form of free speech under the First Amendment and that free speech was abridged by all the Defendants.

79)     According to Policy B .0705, an inmate may prepare a manuscript for the following reasons: private use, for outside typing, for copyrighting, and /or for publication while in the custody of the Department of Correction without staff approval. An inmate may use only non-work or non-program assignment time to prepare a manuscript.  The Facility Head may limit the accumulation of manuscript material as necessary for the following reasons: security, sanitation and safety, including maintaining access to cell doors and preventing fire hazards. Defendants reason for confiscation was stated as Arts and Crafts Contraband, which does not fall under the guidelines of Policy .0705 - Manuscript Confiscation.

80)     Plaintiff has suffered injury, including irreparable injury and damages as a direct and proximate result of Defendants' violation of his First Amendment Rights and Breaching of Settlement Agreement for DOP Policy and Procedures Manual B.0700, new Section B.0705 – Inmate Manuscripts (Martin v. Keller). Defendants are jointly and severally liable to Plaintiff for all such damages in an amount to be proven at trial.

## SECOND CAUSE OF ACTION – ALL DEFENDANTS

## DEPRIVED PLAINTIFF OF GRIEVANCE REMEDY TO RETURN PROPERTY AND APPEAL PROCESS VIOLATION ABROGATED PLAINTIFF'S RIGHT TO DUE PROCESS UNDER THE FOURTEENTH AMENDMENT

81)     Plaintiff incorporates by reference paragraphs 8 through 76 of this complaint as fully set herein.

82)     The actions of Defendants to deprive Plaintiff of manuscript and grievance remedy, appeal finalization, and Plaintiff's protection under New Policy B.0705 -Inmate Manuscript, violated the rights of the Plaintiff to Due Process of Law under the Fourteenth Amendment to the United States Constitution which guarantees that prisoners are entitled to at least minimal procedural safeguards before they may be deprived of their property. This ensures that their constitutional rights are not entirely abrogated.

83)     Plaintiff therefore alleges that the actions of Defendant Evans, in confiscation, denial of grievance remedy, and mailing out Plaintiff's manuscript before completion of grievance process (appeal process), constituted the official policy and custom of the Defendants and was part of a pattern of conduct of abrogation of citizens' rights.

84)     In the alternative, Defendant Evans acted outside of policy B.0705 -Inmate Manuscript. Defendant Evans acted outside the scope of her agency, outside

the pattern, practice or custom of Defendants, and/or in an intentional, malicious or corrupt manner in her dealings with the Plaintiff; and, therefore, Defendant Evans is personally liable for the violation of Plaintiff's rights.

85)     Plaintiff has suffered injury, including irreparable injury due to his inability to finish his six years' work on green products. He has suffered damages as a direct and proximate result of Defendant's confiscation of personal property and denial of Plaintiff's grievance remedy as alleged herein. Defendants are jointly and severally liable to Plaintiff for all such damages in an amount to be proven at trial.

### THIRD CAUSE OF ACTION – DEFENDANT EVANS

### ONLY CONVERSION

86)     Plaintiff incorporates by reference paragraphs 37 through 67 of this complaint as if fully set out herein.

87)     Plaintiff had the right to possess his manuscript and Defendant Evans wrongfully confiscated Plaintiff's manuscript, then mailed it out without state authorization. According to policy .0705, section (D), If a prison staff confiscates an inmate's manuscript because the inmate has violated this section or for any other reason [of violation], the manuscript shall be identified on a form DC-160

(Personal Property Inventory) by its title (if any), its number of pages, and any other identifying characteristics. The date and time of the confiscation shall be noted on the DC-160. The manuscript shall be maintained in DOC's custody unless it is mailed out in accordance with subsection (d)(3) or returned to the inmate. If the confiscated manuscript is not being held as evidence, the inmate may elect to have the manuscript mailed out at the inmate's expense. The appropriate Region Director shall be consulted prior to the final disposition of any confiscated manuscript. Nowhere is it noted that the appropriate region director was consulted prior to the final disposition of the Plaintiff's confiscated manuscript. By intentional, malicious confiscation, by mailing Plaintiff's manuscript out without providing Plaintiff with post-deprivation remedy, thereby depriving Plaintiff of his property without State authorization, Defendant Evans unlawfully converted Plaintiff's property in violation of state law.

88)     As a direct and proximate result of Defendant Evans action herein, Plaintiff has suffered damages for his confiscated and mailed out manuscript. These actions, being inconsistent with the property rights of the Plaintiff resulted in the tort of conversion.

## FOURTH CAUSE OF ACTION – DEFENDANT EVANS ONLY

## NEGLIGENCE

89)     Plaintiff incorporates by reference paragraphs 37 through 67 of this Complaint as fully set out herein.

90)     Under the negligence theory of *res ipsa loquitor* the defendant's actions against the plaintiff were negligent because Plaintiff's damages were the kind that do not occur absent some negligent act.

91)     The conduct of Defendant Evans, in wrongfully confiscating and mailing out Plaintiff's Manuscript before appeal finalization, was committed purposefully and was with knowledge that her acts constituted a breach of Settlement Agreement New Policy (Inmate Manuscripts) B.0705, and a breach in her duties to observe and honor the rights of others.

92)     In addition, the actions of Defendant Evans were done needlessly, unreasonably, manifesting a conscious and reckless disregard of and indifference to the rights of others.

93)     The conduct of Defendant Evans amounted to negligence in the performance of her duties owed to Plaintiff.

94)     As a direct and proximate result of Defendant Evans' actions herein, Plaintiff has suffered damages for his uncompleted manuscript that was unlawfully confiscated for what seems to be malicious reasons; for mailing out

Plaintiff's manuscript while Plaintiff's grievance was still on appeal, denying

Plaintiff's manuscript to be returned indefinitely unless returned by a publisher

as a book (Policy of Department of Safety, Division of Prisons).

## FIFTH CAUSE OF ACTION – DEFENDANT EVANS ONLY

## VIOLATION OF PLAINTIFF'S RIGHT UNDER 42 U.S.C. 1981
## TO BE FREE FROM RACIAL DISCRIMINATION

95)      Plaintiff incorporates by reference Paragraphs 49 through 51 and 66 as is

fully set out herein.

96)      Plaintiff is of the African-American race, a racial minority within the

protections afforded racial minorities under 42 U.S.C. 1981.

97)      Defendant Evans acted with unlawful racially discriminatory motivation in

targeting Plaintiff to confiscate Plaintiff's recycled paper model car and

manuscript...then mailing Manuscript before completion of grievance appeal

decision. As evidence Plaintiff obtained affidavits from Caucasian inmates

having arts and crafts (figurines, maps, dice) on Feb 3, 2018 which is the exact

time Plaintiff's manuscript and recycled paper model car was unlawfully

confiscated by Defendant Evans.

98)      Defendant Evans' discriminatory acts of confiscation and mailing out of

Plaintiff's manuscript were performed under color of state law.

## **JURY DEMAND**

Plaintiff hereby demands trial by jury on all issues so triable.

**WHEREFORE,** Plaintiff hereby respectfully requests that this Court issue:

1.    A declaratory judgement declaring the following:

a. Defendants breached Settlement Agreement Policy B .0705 Inmate

Manuscripts (see <u>Martin v. Keller</u>, et. al., 5:09-CT-3021-FL (E.D.N.C.)

to deprive Plaintiff from writing, illustration, seeking to publish

*Do-It-Yourself* Manuscript (reinventing recycled paper into

Eco-friendly products) violated Plaintiff's rights under the First and

Fourteenth Amendments.

2.    An injunction prohibiting Defendants, their successors, assigns, those

persons in active concert or participation with Defendants, and all other persons

within the scope of Federal Rule of Civil Procedure 65, from Breaching Settlement

Agreement (<u>Martin v. Keller</u>, et al., 5:09-CT-3021-FL (E.D.N.C.) Policy B .0705 –

Inmate Manuscript, in order not to deprive Plaintiff for (1) literary work, *Do-It-*

*Yourself* instructional work to teach reinventing recycled paper into usable quality

eco-friendly green products, (2) denying Plaintiff to publish literary work, Do-It-

Yourself manuscript CR # TXU2-096-349.

3.    Recovery of nominal, compensatory and punitive damages in an amount to be proven at trial;

4.    Reasonable expenses and attorney fees, pursuant to 42 U.S.C. 1988;

5.    That Plaintiff have and receive a jury trial on all issues so triable; and

6.    Such other relief as to the Court seems just and proper.

Respectfully submitted this 10th day of April 2019.

Jesse T. Graham #015/891
Columbus Corr. Institute #4355

1255 Prison Camp rd.

Whiteville, NC 28472

# Certificate of Service

This is to certify that the foregoing has been placed in the internal mailing system at Columbus Correctional #4355, U.S. Postal Mail Box, postage prepaid and properly addressed as follows:

＊ ████████████████

To: Jennifer L. Walsh
Columbus Correctional Institute
1255 Prison Camp Road
Brunswick, N.C. 28484

To: Melissa Evans
Columbus Correctional Institute
1255 Prison Camp Road
Brunswick, N.C. 28484

To: Pazavan C. Priest
Columbus Correctional Institute
1255 Prison Camp Road
Brunswick, N.C. 28484

To: Kimberly D. Grande
Inmate Grievance Resolution Board
4207 Mail Service Center
Raleigh, N.C. 27699-4207

Date: April 10th 2019

signature: _Jesse T. Graham_
Address: 1255 Prison Camp Rd.
Whiteville, NC
28472